THORPE v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

1. **Pleading**: CONTRIBUTORY NEGLIGENCE: PRACTICE. Contributory negligence is a matter of defence, and need not be alleged or proved by the plaintiff.

2. The Evidence in this case held sufficient to authorize the submission of the case to the jury.

3. **Master and Servant**: NEGLIGENCE OF FELLOW SERVANT. Where a servant is injured in consequence of the negligence of a fellow-servant, the master is not responsible in damages for the injury.

4. ———: NEGLIGENCE. A servant is not necessarily chargeable with negligence in remaining in the master's employment, although he

Thorpe v. The Missouri Pacific Railway Company.

may know that the appliances for carrying on the business are defective and insufficient, if the danger or risk is not such that, as a prudent man, he was not bound to assume them, and to refuse to continue in the service.

5. ——— : ——— : PRACTICE. If the defect or insufficiency in the appliances, which term embraces the men employed to do the work as well as other instrumentalities employed, is so great that, obviously, with the use of great caution, the danger is imminent, then, as a matter of law, the servant who incurs the risk is guilty of contributory negligence and cannot recover; but if upon this question there is substantial doubt, the question is one of fact for the jury, and a non-suit or demurrer to the evidence is not permissible.

5. Practice : INSTRUCTIONS. One party cannot be heard to complain of the other's instructions where his own announce the same doctrine, although it be erroneous.

*Appeal from Jackson Circuit Court.*—HON. F. M. BLACK, Judge.

AFFIRMED.

*T. J. Portis* and *Bennett Pike* for appellant.

(1) The objection by defendant to the introduction of any evidence under the petition, based upon the ground that said petition did not state facts sufficient to constitute a cause of action, should have been sustained, and the refusal of the court to so hold was error. *Flynn v. Railroad*, 78 Mo. 195; *McMillon v. Railroad*, 20 Barb. 449; *Spelman v. Fisher Iron Co.*, 56 Barb. 151; *Buzzell v. Laconia Man. Co.*, 48 Me. 113; 2 Thompson on Neg., p. 1050, sec. 47; *Railroad v. Barber*, 5 Ohio St. 541. (2) The court committed error in refusing to sustain the demurrer to the evidence by defendant at the close of all the testimony in this case. *Railroad v. Barber*, 5 Ohio St. 541; *Huffman v. Railroad*, 78 Mo. 52, 55. (3) The court erred in giving the instructions asked by plaintiff. *Goetz v. Railroad*, 50 Mo. 472; *Devitt v. Railroad*, 50 Mo. 304. (4) The court erred in

refusing the instructions asked by defendant. (5) The instruction given by the court on its own motion was erroneous.

*Woodson & Slaughter* for respondent.

(1) The petition fully stated a cause of action. It is not necessary in an action for negligence even to allege that the plaintiff was not guilty of contributory negligence or was using due care and precaution. That is a matter of defence. *Thompson v. Railroad*, 51 Mo. 190; *Lloyd v. Railroad*, 53 Mo. 509. Even if the allegation of lack of contributory negligence were necessary, the petition specifically states that fact. It certainly was not necessary to allege that plaintiff had no knowledge of the insufficiency of the help. Even if plaintiff had knowledge he may recover, if he is not guilty of contributory negligence, and knowledge is only a part of negligence. *Flynn v. Railroad*, 78 Mo. 195; *Keegan v. Kavanaugh*, 62 Mo. 230; *Stoddard v. Railroad*, 65 Mo. 514. (2) (*a*) There is entire agreement between the facts alleged in plaintiff's petition and those given in evidence. (*b*) Evidence tending to connect the accident to plaintiff with the failure in the company to furnish a sufficient number of hands to do the work required in making up trains, is full and complete. (*c*) It was for the jury to say, under instructions from the court, whether the accident occurred through the negligence of a fellow-servant or that of the railway company. (*d*) The fact that plaintiff continued in the employ of defendant after the fourth man was taken away, and he was aware there was some danger, does not preclude his right to recover. It is a primary duty devolving on the master to furnish proper instrumentalities and sufficient help. Because he fails in this the servant is not bound to leave his employment. But if he remains, it is a question for the jury to decide whether he assumed such risks as a

prudent man would not incur. If not, then he may re-
cover. *Stoddard v. Railroad,* 65 Mo. 514; *Keegan v.
Kavanaugh,* 62 Mo. 230; *Flynn v. Railroad,* 78 Mo.
195. Plaintiff's own testimony does not show that three
men were sufficient to do the work. (3) The instruc-
tions given on behalf of the plaintiff were proper, and
presented the correct law of the case. The second
ignores no fact which tends to show contributory negli-
gence. *Fitzgerald v. Hayward,* 50 Mo. 516, and cases
cited. Where the only defect in an instruction is that
it contains an ambiguous or general term, it may be ex-
plained by another, and a partial view may sometimes
be supplied, but the whole must be consistent and har-
monious. *Goetz v. Railroad,* 50 Mo. 472. It was for
the jury to say whether the plaintiff, by continuing in
the employment of defendant after the fourth man was
discharged, was guilty of negligence. *Stoddard v. Rail-
road,* 65 Mo. 514. The question of contributory negli-
gence is usually one of fact for the jury under suitable
instructions. *Smith v. Railroad,* 61 Mo. 588; *Stoddard
v. Railroad,* 65 Mo. 514. When the question of negli-
gence arises on a state of facts on which fair minded
men may rationally arrive at opposite conclusions, the
issue is properly submitted to the jury. *Ernst v. Rail-
road,* 3 Abb. [N. Y.] 82, 104; 35 N. Y.; 39 N. Y. 61.
(4) The instruction asked for by the defendant on the
question of contributory negligence was properly re-
fused. It ignores the fact that the master and servant
do not stand upon precisely the same footing. If the
danger was not so apparent that remaining would be an
act of recklessness, it was the right, and in cases might
be the duty of the servant to remain for a time. *Conroy
v. Vulcan Iron Works,* 62 Mo. 35; *Keegan v. Kavan-
augh,* 62 Mo. 230; *Stoddard v. Railroad,* 65 Mo. 514;
*Flynn v. Railroad,* 78 Mo. 195. (5) The instruction
given by the court of its own motion was an accurate
and concise statement of the law of contributory negli-

gence under the evidence in the case. To constitute contributory negligence the danger must be. so apparent or known to be so great that a man of ordinary prudence and caution would not have continued therein. *Conroy v. Iron Works*, 62 Mo. 35; *Stoddard v. Railroad*, 65 Mo. 514.

RAY, J,—This is a suit for damages for personal injuries sustained by plaintiff, whilst in the employment of defendant as a switchman in its yards at Kansas City, Missouri. A trial thereof in the circuit court of Jackson county, resulted in a verdict and judgment in plaintiff's favor in the sum of twenty-five hundred dollars, from which defendant has appealed to this court. In his amended petition plaintiff charges a failure of duty on the part of defendant to furnish a sufficient number of hands in conjunction with plaintiff to carry on the business of making up trains in defendant's yards, and in conveying signals with proper dispatch and safety ; that defendant was duly notified of this ; that about the time of the injury plaintiff had gone between two of the cars, and had attempted to couple them ; that failing to do so he stepped out and gave a stop signal, and then went again between the cars to effect the coupling, but that owing to the insufficiency of help employed to assist him, said stop signal failed to reach the foreman of the work, or the engineer, in consequence of which the foreman gave the signal to the engineer to back the cars, which the engineer did, and that plaintiff's hand was caught between two of said cars, and thereby injured, and that the same was caused without any negligence on his part.

The objection was made at the trial, which is renewed in this court, that the amended petition wholly failed to state any cause of action, and that, therefore, no evidence should have been received in support of it. In support of this objection defendant's counsel has

cited and quoted 2 Thompson on Negligence, 1050, where the author, after discussing the grounds upon which the master's liability to his servant has been placed in a number of cases, says : "From this it would seem to follow as a rule of pleading, that the plaintiff must allege in his declaration or complaint that the employer had notice or knowledge of the efficient cause of the injury, or ought, by the exercise of reasonable diligence, to have known it ; and that the servant did not have such knowledge, or was not ignorant of it in consequence of a want of ordinary care on his part." But the same author, at page 1051, also says it must appear that the servant was excusably ignorant of the defective appliances, yet it does not necessarily follow that a declaration will be bad which does not so allege, although it is better that such allegation should be made, and that this is obvious when it is considered that there are many cases where mere knowledge on the part of the servant does not operate to bar his right of action.

The cases from which the rule for which defendant contends is taken, are, we believe, from courts not in accord with this court as to the rule of pleading the contributory negligence of plaintiff, and which hold that the burden of proof is upon plaintiff to show both the negligence of defendant and his own care, which is not the rule in this state. *Petty v. Railroad*, 88 Mo. 306. The continuance of plaintiff in the employment with knowledge of the risk arising from the insufficient force for the required work, was set up affirmatively in the answer as a defence to the action, as we think it should have been. We, therefore, hold the objection to the petition not well taken.

It is urged in behalf of defendant, that there is nothing in the evidence to show that plaintiff's hand was injured by the collision of the cars, or while he was attempting to make the coupling, or as to how the accident happened. In answer to the question to state

how the injury described in the petition occurred, plaintiff says: "When I first went in between the cars to make the coupling I found a difference in the drawheads, one high and one low, and I failed to make the coupling, and I stood out and gave the signal to stop; the cars stopped and then I went in to change the links, to turn the link over so as to make the coupling." On re-examination, plaintiff stated in answer to the question: "What injuries did you receive in that accident?" "I lost two of my fingers." James Thorpe testified on this point: "At the time of the injury I was standing about ten car lengths from McGee, and about twenty from my brother; the cars backed down on my brother immediately after I gave the back signal to the engineer and struck and cut his hand." Enough is shown by the evidence, we think, to make it apparent that plaintiff's hand was caught and injured, and that his fingers were lost in the manner and by the means substantially as charged in the petition.

A further objection to the sufficiency of the evidence is that it fails to show that there was any insufficiency in the number of hands employed to do the work. In answer to the question how many men are required and are usually considered necessary for the work in which he was engaged, the plaintiff testified: "Four men; they can give the signals better, that is the fourth man can, because the others are occupied with some other work; they have to couple and uncouple cars, and throw switches, which requires three men, and where there is a fourth he gives the signals; we had three men at the time of my injury." James Thorpe testified: "The whole yards there are very irregular, and the tracks are crooked, and not a proper distance apart; it is a more intricate set of tracks than tracks used for that purpose usually are; our help was short of the usual number at the time of the accident; I considered it short because we needed more men to get the signals from one to the

other; our work was to couple cars, convey signals, throw switches, and look out for street crossings; one man does the coupling and uncoupling, another looks out for signals, a switchman usually stands at the switch, and the foreman usually does the cutting off; when we only have a coupler, a switchman and a foreman, we need another man to convey signals; we need the other man because the switchman is often on the side of the cars where he cannot give signals; we were rushed with work the night of the accident."

A. G. Hinkle, who was yard-master at the time, testified: "I regard four men as sufficient, when we are very much crowded more men are required; that end of the track is pretty crooked; part of it is good."

In the testimony of plaintiff also occurs the following: Q. "Do you regard three men as insufficient to do the business?" A. "No sir; provided they are careful, and things are in proper shape." Q. "You don't exactly catch my meaning. I asked you how many men are usually required to transact this business, and you answered four?" A. "Yes, sir." This statement by plaintiff that he did not regard three men as insufficient to do the business, provided they were careful and things were in proper shape, has an important bearing on the question, but it is not, we think, to be regarded as a conclusive admission on his part that three men were sufficient. The statement itself is qualified. Plaintiff, as we have seen, stated several times that four men were necessary, and his evidence in this behalf should be taken in its entirety. This statement of plaintiff was for the jury to consider along with the rest of his testimony, and the testimony of the other witnesses. The evidence in this branch of the case tends to show that the force was insufficient to transact the business required, and was at least sufficient to carry the question, along with that of a contrary tendency, to the jury for their determination.

A further objection urged, and which we may con-
sider in this connection, is that the evidence fails to
establish any legal connection between the injury to
plaintiff and defendant's alleged negligence in not fur-
nishing the necessary number of laborers; that "there is
nothing in the testimony to show that plaintiff's going
in between the cars to turn the link and prepare the
coupling, in any manner grew out of the failure of the
railway company to have a sufficient number of em-
ployes in said yard, or that any accident happened in
consequence of his going between said cars." In this
objection, as thus stated, defendant misconceives, as we
believe, the case plaintiff seeks to make. The evidence
shows that plaintiff gave a timely and proper signal for
the train to stop before going in between the cars to
turn the link over, or to prepare to make, or make the
coupling, and that the engineer and foreman failed to
receive the signal thus given, in consequence of which
the cars were backed upon him, and his hand caught
and injured. It is this failure of the engineer and fore-
man to receive the signal to stop, duly given by plaintiff,
which the facts and circumstances in evidence must con-
nect with, or show to be due to, the insufficiency of the
help furnished by defendant. If McGee, who was
plaintiff's fellow-servant, received the signal and failed
to notify the engineer or foreman, which is a view
urged by defendant, or failed to receive it through his
own neglect, then the defendant manifestly would not be
responsible in damages for the injury thus occasioned
plaintiff by his fellow-servant. Defendant, however,
had the benefit of this theory of the evidence, if there
was any to that effect, in an instruction given at his in-
stance which so declared the law. But it is well, perhaps
even necessary, to state just here, in connection with
this objection in its various forms, what the evidence
shows, or tends to show, as to the situation and occupa-
tion of the parties at the time, and especially as to

Thorpe v. The Missouri Pacific Railway Company.

where said McGee was, and what he was doing at the time. It was in the night and about two o'clock in the morning when the accident happened. The men composing the switching crew were: James Thorpe, a brother of plaintiff and foreman at the time, said William McGee and plaintiff. They were very much hurried, having, as the foreman testified, about twenty minutes to handle the train containing about forty cars and make it up into two sections. The work involved, as we have seen in the evidence heretofore quoted, coupling and uncoupling the cars, giving signals, throwing switches and attending street crossings. At the time of the accident the foreman was switching cars, and about ten car lengths from the engine. McGee was tending the switch about ten car lengths from said foreman, and plaintiff was about ten car lengths from McGee, and thus about twenty car lengths from the foreman and thirty from the engineer. The evidence for plaintiff shows that the tracks were not at a proper distance apart, and were much more intricate than usual. It also shows that on account of the curves in the track, and obstruction of the cars, neither the engineer nor foreman could see plaintiff or his light, which made it necessary that any signal which the plaintiff might give, should be received and transferred by some one else. When the plaintiff stepped out from between the cars, and gave the signal to stop he saw a light in the yards where McGee was expected to be, and where he would be in the ordinary and usual course of business. The plaintiff supposed the man with this light was McGee, and that he received the signal which he gave to stop.

In this behalf, James Thorpe testifies: "When we see a light at the next station we suppose it is one of the crew, as no one else has any business in the way. We don't need any indication that the signal is received. It is not the custom, nor is it necessary, to return signals."

About this time the foreman asked McGee if the cars were clear so they could be coupled, and McGee answered no, whereupon he told McGee to shove them further back, and gave the signal to the engineer to back up, which was done, and the injury to plaintiff was inflicted at this time. The foreman testified that at the time the cars struck he could not see McGee, but at the time the signal was given to back up he did see him, and his statement is, "he (McGee) was throwing the switch at the time—he was rushing at the time, we were all rushed." In another part of his testimony the same witness says: "There was at the time almost double the work." It was in this interval, which must have been very brief, that plaintiff must have given his signal to stop. Was it received by McGee? He did not, as the evidence shows, communicate it, as was his duty, and he well knew the danger attending his neglect in this behalf. The evidence then locates McGee at the switch throwing the same, and very much rushed with his duties almost immediately before the accident happened, and tends to show, and would authorize the jury to infer, or find, that McGee did not receive or convey to the engineer the signal to stop, which plaintiff had given, on account of being too much rushed with his said work.

Where there are four men engaged in this work, which number, according to evidence for plaintiff, is required and usually employed, it seems that "one man does the coupling and uncoupling, another looks out for signals, the switchman usually stands at the switch and the foreman usually does the cutting off." This is the testimony of the foreman in charge of this crew at the time. He further says that the fourth man is needed because the switchman is often on the side of the cars where he cannot give signals. Manifestly, then, the evidence tends to show that if the fourth man had been employed and at work at the time, giving his whole attention to the

signals, the timely signal to stop, given by plaintiff, would probably have reached the engineer and the injury to plaintiff would not have happened.

But, again, counsel for defendant urge a further question and objection to the recovery in this action, which is that the testimony of plaintiff himself shows that whatever danger there was in working in the yard of defendant with three men, was well known to him more than a week before his alleged injury, and that he continued in said work, under such circumstances, and with such knowledge, until the happening of the accident. That he, therefore, voluntarily assumed the risk, waived the obligation of the defendant to furnish an additional workman, as to himself, and if he was injured by such delinquency on the part of the railway company, he is without remedy against the company for damages.

This was, as already stated, set up in the answer of defendant as a further defence to the action. A proper disposition of this question, which is, we think, the most important in the case, makes it desirable, if not necessary, to state the facts especially pertinent and relevant in this connection. The evidence advanced upon the trial shows that plaintiff had considerable experience in this branch of the railroad business; that some months previous to the accident he had worked for a while, perhaps for three or four weeks, for defendant, in its said yards at Kansas City, where he was injured; that about ten days before the accident happened, he had again resumed work for defendant in this capacity, at which time there were, including plaintiff, four men in the "switch crew," but that a few days thereafter one of the men quit work, leaving plaintiff and two others to do the work. Plaintiff had complained of the insufficiency in the number of the hands to the yard master, previous to the accident. He also says, in his evidence, that while four men were necessary to do the required work,

he remained when there were but three men because he thought, by being careful, they might go ahead.

The question then is, whether the plaintiff, in remaining at work under these circumstances, must be held to have waived the discharge of defendant's duty to him in this behalf, and to have assumed the risk incident to the performance, or attempted performance of the work, with three men instead of four; or, in other words, was his knowledge of the dangers and risks involved in his undertaking to carry on the work with the reduced force, such as will necessarily charge him with negligence. In some of the cases of this sort where a recovery has been denied, the servant has been deprived of his right of action upon the ground of waiver, and assumption of the risk, and in others upon the doctrine of contributory negligence. Shear. & Redf. on Neg. 126; *Clarke v. Holmes*, 7 H. & N. 937; *Laning v. Railroad*, 49 N. Y. 541.

Again, it is said that mere continuance in the employment, with knowledge of defective or inadequate appliances, causing the injury, is not necessarily fatal to the right of action. 3 Wood's Railway Law, 1460. And that such previous knowledge of danger is only a part of negligence, or that it is a strong circumstance tending to show negligence on the part of the servant, or at least one to be considered, but that it is not necessarily decisive or conclusive. *Snow v. Railroad*, 8 Allen, 450; Wood's Master & Servant, 720; *Clarke v. Holmes*, 7 H. & N. 942. The servant is not necessarily chargeable with negligence in remaining in the employment, although he may know that the appliances are defective and insufficient, if the danger or risk is not such that, as a prudent man, he was bound not to assume them, and to refuse to continue in the service. Shear. & Redf. on Neg. [3 Ed.] 125; Wood's Railway Law, 1460; Wood's Master & Servant, 761; *Snow v. Railroad, supra; Patterson v. Railroad*, 76

Pa. St. 389; *Filer v. Railroad*, 49 N. Y. 50; *Clarke v. Holmes*, 7 H. & N. 942. If the defects or insufficiency in the appliances, which term embraces the men employed to do the work, as well as other instrumentalities employed, is so great that, obviously, with the use of great caution, the danger was imminent, then, as a matter of law, the servant who incurs the risk is guilty of contributory negligence, and cannot recover. But, if upon this question there is substantial doubt, the question is one of fact for the jury, and a non-suit or demurrer to the evidence is not permissible. Wood's Railway Law, 1460; Wood's Master & Servant, 761. Perhaps the leading case upon this subject is that of *Snow v. Railroad*, already cited. In that case the plaintiff had been aware of the defect that caused his injury for more than two months previous to the accident, and a suggestion was there urged similar to the one now being considered, that plaintiff ought not to recover because he continued in the performance of his duties after he was aware of the defect, but the court refused to so hold as a matter of law upon the ground "that his continuance in the employment did not necessarily and inevitably expose him to danger."

Speaking for this court in the case of *Conroy v. Vulcan Iron Works*, 62 Mo. 39, Wagner, J., uses this language: "Where the defect is so glaring that with the utmost care and skill the danger is still imminent, so that none but a reckless man would incur it, then if the servant will engage in the hazardous undertaking he must be considered as doing it at his peril. But if the defective machinery or appliances, although dangerous, are not of such a character that they may not be reasonably used by the exercise of skill and diligence, the servant does not assume the same risk. He is required to take, and will be held responsible for the care incident to the situation in which he is placed, and whether he exercised that degree of caution is a fact for the deter-

mination of the jury." But whether based on the one doctrine or the other, is, we think, immaterial. The facts which in the one set of cases are held to show the waiver are such, in effect, as are held to constitute the concurring negligence in the other. Shearman & Redfield, who, in their valuable work on negligence, hold that the doctrine is a branch of the law of waiver, say that a party to any other contract having mutual obligations is allowed to fully perform his part, notwithstanding the failure of the other party to fulfill a condition precedent without necessarily waiving his right to insist upon performance of such condition at a later period. It is not fair to require from servants a more peremptory assertion of their rights against the master than would be required between parties standing upon a more equal footing. The dependent position of servants generally makes it reasonable to hold any notice on their part sufficient, however timid and hesitating, so long as it plainly conveys to the master the idea that a defect exists, and that they desire its removal. That the real question to be determined in each case is, whether, under all the circumstances, the master had a right to believe and did believe that the servant intended to waive his objections to the unfitness of his fellow servant or the defect in the materials provided for the work. It is also held in a number of cases that the assumption of the risk only follows as a result from the servant's remaining after knowledge of the defect, where he continues without objection or protest or complaint on his part. Thompson on Negligence, 1009, and a line of cases cited in the note to the text.

Under these authorities the question is, was the plaintiff reasonably justified in believing that three men, by being careful, might go ahead with the work, though the same might be more dangerous than usual; or was the danger in so doing so obvious and imminent, and injury so probable, that under the same circumstances a

Thorpe v. The Missouri Pacific Railway Company.

prudent man would have regarded it as negligent to perform the particular duties which the work required? Perhaps reasonably prudent men, similarly situated, might have taken different views of this question of their duty in the premises, and if so the case is one for the jury. Indeed the theory of the defence to this action is in part that three men could properly and safely do the required work. To this effect is the testimony of the witness, Sheriff, the general yard master of the defendant. Plaintiff, with the two remaining men, safely performed the work, or similar work to that in which he was engaged when injured, for a number of days after the other man quit. And this, it is said, is a circumstance entitled to be considered and bearing upon the question of plaintiff's contributory negligence. Wood on Master and Servant, p. 760, sec. 386; *Patterson v. Railroad*, 76 Pa. St. 389.

While as the event shows the judgment of plaintiff in remaining was erroneous, the danger greater than it appeared to him, it tends to show that it was not so great or obviously imminent that injury therefrom could not reasonably be expected to be avoided "by being careful," which, in this connection, we think, means by the use of additional or more than ordinary precaution. Shearman & Redfield on Negligence, 125. The absence of the fourth man rendered the labor of coupling, uncoupling, switching and handling the cars more onerous generally and more than ordinarily dangerous, but we think we ought not to say upon the evidence before us, as a matter of law, that plaintiff waived the discharge of the defendant's duty to him to furnish sufficient help, and that he voluntarily assumed the particular risk or danger that caused his injury, or that the evidence is such as conclusively indicates a state of facts and circumstances that require him to peremptorily abandon and discontinue his said employment. In this connection we may add that the defendant asked

and the court gave at its instance an instruction as follows :

"If you find from all the facts and circumstances in evidence that there was an insufficient number of men furnished by the defendant to do the work in which the plaintiff was engaged, with safety ; that the danger of carrying on such work with the number of men engaged therein was so apparent, or was known to the plaintiff to be so great that a man of ordinary prudence and caution would not have engaged or continued therein, then the plaintiff was guilty of negligence, and you shall find for the defendant."

It only remains to consider briefly the action of the court upon instructions. As for those given for plaintiff and at his instance, it is perhaps sufficient to say that no objection is made to the first. That the second and third confined the inquiry to the particular negligence declared on in the petition and required the jury to find that the plaintiff was injured in consequence thereof, and that he was free from negligence on his own part, contributing to the result. The objections urged against them are covered by the discussion already had in the progress of this opinion. The fourth given for plaintiff, and the one given by the court of its own motion, are counterparts to the second given for defendant above set out and announced the same doctrine. Where this is so, even if they are erroneous, a party cannot complain. No specific objections are made or urged in the brief of counsel to the court's action as to the refused instructions. They were, we think, properly refused.

Finding no error in the record, the judgment of the circuit court is affirmed for the reasons above stated. All concur, except Henry, C. J., not sitting.