MEW v. CHARLESTON &. SAVANNAH RY. CO.

1. ELECTOR.—"Qualified elector," in the Constitution of 1895, means "registered elector." *Mr. Chief Justice McIver dissenting.*

2. A JUROR must be a "registered elector."

3. NEW TRIAL—JURIES AND JURY TRIALS.—A motion for new trial on ground that a juror who sat in the case was not a "registered elector," comes too late after verdict.

4. PLEADINGS—CAUSE OF ACTION—NEGLIGENCE.—A COMPLAINT alleging several co-operative acts of negligence as the resultant cause of an injury states one cause of action, and is not objectionable for lack of definiteness and certainty.

5. DEMURRER—PLEADINGS—NEGLIGENCE.—THIS COMPLAINT is not amenable to the objection by demurrer that it does not allege that the injury complained of was the result of the alleged acts of negligence.

6. PLEADINGS—AMENDMENT OF—COMPLAINT.—A Circuit Judge has power to permit a complaint to be amended during argument after testimony is in, so as to make allegations conform to facts proved, when cause of action is not changed, and adverse party is not taken by surprise.

7. CHARGE complained of not on the facts, but contains a hypothetical statement of facts, necessary to explain the law applicable to the case.

8. MASTER AND SERVANT—WAIVER—RAILROADS—FREIGHT TRAINS— JURIES AND JURY TRIALS.—WHETHER A CONDUCTOR waives the liability of his employer and assumes the risk himself of operating a freight train with an insufficient number of hands by taking. on more cars after going out, under orders of employer, and against his own protest, when the evidence is capable of more than one inference, is a question for jury.

9. RAILROADS—FREIGHT TRAINS—BRAKES.—Under Rev. Stat., 1681, railroad companies are not excused from keeping brakes on "gondola" or "flat" cars having eight wheels used for freight.

10. MASTER AND SERVANT—JURIES AND JURY TRIALS—WAIVER—NEGLIGENCE—RISKS.—When the evidence as to the assumption of risks by the servant is susceptible of more than one inference, and whether it is to be tested by the law of waiver or of negligence, it is a question for the jury.

Before WATTS, J., Charleston, March, 1898.    Affirmed.

Action for damages by Elliott L. Mew against Charles-

ton and Savannah Railway Co. From judgment for plaintiff, defendant appeals.

*Messrs. Mordecai & Gadsden,* for appellant, cite: *Error not to grant motion to make complaint more definite and certain:* 30 S. C., 113; 24 S. C., 270; 37 S. C., 55; 42 S. C., 119. *The causal relation between the negligent act of the defendant and the injury is not set out in the alleged cause of action:* 48 A. & E. R. R. C., 87; 76 Mo., 288; 21 S. C., 466. *Error to allow complaint amended at time permitted by setting up an entire new act of negligence:* Code, 190, 191, 192, 194; 3 S. C., 410; 6 S. C., 138; 16 S. C., 196; 19 S. C., 566; 27 S. E. R., 467; 13 S. C., 400, 494; 30 S. C., 574; 32 S. C., 120; 35 S. C., 576. *Total failure of proof as to allegations stricken out, and could not be cured by amendment:* 37 S. C., 55; 42 S. C., 119; 25 Mo., 308; 9 S. E. R., 616; 27 S. E. R., 467. *No amendment should have been allowed at this stage of the case:* 5 Daley, 452; 26 Mich., 410; 22 Fed. R., 217; 22 S. E. R., 883; 108 N. Y., 650. *Error to refuse defendant's 4th request to charge:* 5 Ohio St., 541. *Jury was charged as to material fact in case, which was error:* 47 S. C., 488; 49 S. C., 294, 496, 550; 29 S. E. R., 206. *As to plaintiff's assumption of risks:* 21 S. C., 541.

*Messrs. Legare & Holman,* contra, cite: *Exceptions 1, 2 and 3 are too general:* 46 S. C., 76, 184; 48 S. C., 323; 47 S. C., 97; 42 S. C., 281. *Demurrer properly overruled:* 49 S. C., 478; 18 S. C., 469. *Amendment properly allowed:* 51 S. C., 412. *Request not correct as a whole may be disregarded:* 46 S. C., 203. *Fourth request if charged would have taken from jury question of negligence:* 47 S. C., 375; 30 S. E. R., 479; 48 S. C., 364. *Charge not on facts:* 30 S. E. R., 833; 50 S. C., 52. *Twelfth request would have taken from jury question of defendant's gross negligence:* 30 S. E. R., 479; 47 S. C., 575.

April 27, 1899.   The opinion of the Court was delivered by

MR. JUSTICE JONES.   The defendant company appeals from a judgment rendered against it in favor of the plaintiff for personal injuries received through the alleged negligence of defendant in the management of its train.   A preliminary motion, however, was made to suspend the appeal for the purpose of allowing defendant to move the Circuit Court for a new trial on the ground that one of the jurors, who sat in the case, was not a qualified elector under the Constitution, for want of registration, and, therefore, not a legal juror.   The affidavits submitted in support of the motion are quite sufficient to made a *prima facie* showing that the juror, Gause, was not at the time of the trial registered, in the county of Charleston, as an elector, and that such fact was not actually known to defendant or its counsel at the trial.   An examination of the books of registration, after the trial, disclosed the fact that said Gause was not registered.   Will this showing justify us in suspending the appeal for the purpose named?   We think not, for the reasons now stated.

Art. 5, sec. 22, of the Constitution provides "* * * Each juror must be a qualified elector under the provisions of this Constitution, between the ages of twenty-one and sixty-five years, and of good moral character."   By art. 2, secs. 3 and 4, registration is made one of the qualifications of an elector.   This is the view of the moving party, but is controverted by the other side, who contend that the Constitution makes a distinction between "qualified electors" and "registered qualified electors."   We cannot agree with this latter contention.   Art. 2, sec. 3, provides: "Every male citizen of this State and of the United States, twenty-one years of age and upwards, not laboring under the disabilities named in this Constitution, and possessing the qualifications required by it, shall be an elector."   Then section 4 proceeds to state the qualifications for suffrage: (a) residence; (b) registration; then (c) the qualifications for

registration of those who apply therefor up to January 1st, 1898, making those so registered *"qualified electors"* for life, unless disqualified by other provisions of the Constitution; then (d) the qualifications for registration of those who apply therefor after January 1, 1898; (e) directing what managers of election shall require of every elector offering to vote; then follows subdivision (f) as follows: "The General Assembly shall provide for issuing to each duly registered elector a certificate of registration, and shall provide for the renewal of such certificate when lost, mutilated or destroyed, if the applicant is still a qualified elector under the provisions of this Constitution, or if he has been registered as provided in sub-section (c)." The argument, as we understand it, is that the above section 4 does not provide the qualifications of an elector, but the qualifications for suffrage or the act of voting. But suffrage is the right to vote, not the act of voting, and it seems untenable to argue that "qualifications for suffrage" does not also mean qualifications for elector, especially when the Constitution immediately preceding defines an elector (among other things) as one "possessing the qualifications *required* by it," the Constitution. Where else in the Constitution must we look to ascertain the qualifications of an elector? We find in section 6 of this article who are disqualified for crime, &c., who come within the class of those "laboring under the disabilities named in the Constitution," but where shall we ascertain the "qualifications required," unless it be in this section. The qualifications of an elector under the Constitution are citizenship, age, residence and registration, subject to disqualification for certain crimes unpardoned, insanity, pauperism and imprisonment, and subject to certain regulations in reference to the certificate of registration, and in reference to proof of payment of taxes when the elector offers to vote. If any distinction among qualifications is permissible, registration must have been deemed pre-eminent. The matter of reading any section of the Constitution, or understanding and explaining it when read, previous to January 1st, 1898, and

of *reading* and writing any section of the Constitution, or the ownership of property assessed at $300, by those applying for registration after January 1st, 1898, are qualifications for registration, not qualifications for suffrage, except as the right of suffrage depends upon the qualifications for registration. The term "qualified elector" is frequently used in the Constitution, and in every instance, except one, it means "registered elector." Take the article under discussion. In sec. 2, "every qualified elector shall be eligible to any office, &c.;" section 4, sub-section (c), where it is provided that those who are registered previous to January 1, 1898, "remain during life qualified electors unless disqualified, &c.;" in section 4, sub-section (f), where a "duly registered elector" still remaining a "qualified elector," if not disqualified under the Constitution, may have renewal of registration certificate in certain cases. The excepted case referred to above is in section 8 of this article, where it is ordained: "The General Assembly shall provide by law for the registration of all qualified electors, &c.," from which it is argued that this implies that there may be qualified electors who are not registered, but for whom registration is to be provided. We grant the language used is not strictly apt or accurate, but construed in the light of the Constitution, as a whole, the meaning is manifest, viz: that the General Assembly shall provide by law for the registration of all persons qualified for registration as electors. This is made very clear by reference to sub-section (c) of section 4 of this article, where it is provided, "up to January 1st, 1898, all male persons of voting age applying for registration, who can read any section in this Constitution submitted to them by the registration officer, or understand and explain it when read to them by the registration officer, shall be entitled to register and *become electors.*" We will not prolong this opinion by reference to the numerous places in the Constitution where the words "qualified electors" are used in order to show that the words mean registered electors, but we note one other instance. In art. 16, sec. 1, providing for amendments to the

Constitution "* * * and.the same shall be submitted to the qualified electors of the State at the next general election thereafter for representatives; and if a majority of the electors qualified to vote for members of the General Assembly, voting thereon, shall vote in favor, &c." Here we have a definition of qualified elector as an elector qualified to vote for members of the General Assembly, and it could not be contended that one is qualified to vote.without registration. But for the earnestness with which the contrary view was pressed we would not have deemed it necessary to say more than that we agree with counsel for moving party that registration is an essential qualification of an elector. It follows that one who has not been registered as an elector in the county when the Court sits is not qualified to serve as a juror in said Court. Still it does not follow that movant must be allowed to suspend this appeal to move for a new trial on Circuit. Previous to the Constitution of 1895, the rule had long prevailed in this State, that what was cause for challenge to a juror could not after verdict be made a ground for new trial. *State* v. *Quarrel,* 2 Bay, 510; *State* v. *O'Driscoll,* 2 Bay, 153; *State* v. *Fisher,* 2 N. & McC., 261; *State* v. *Billis,* 2 McC., 12; *Josey* v. *R. R. Co.,* 12 Rich., 134. In the case of *Garrett* v. *Weinberg,* 54 S. C., 127, this Court held, under the Constitution of 1895, that a new trial should be granted, if a juror, disqualified by conviction for hog stealing, sat on the case, if neither the party nor his counsel knew of the disqualication until after verdict. This case was grounded on the finding of fact by .the Circuit Judge, "that none of the parties to this action, or their respective counsel, had knowledge of the conviction of Ardis during the trial of the case." Such fact this Court was bound to act upon, and could not impute to any one knowledge actual or constructive in conflict therewith. But in the later case of *State* v. *Robertson,* 54 S. C., 147, the rule stated in *Garrett* v. *Weinberg, supra,* was qualified in this language by the Chief Justice, who also wrote the opinion in *Garrett* v. *Weinberg:* "For while it is

true that in the cases of *Kennedy* v. *Williams*, 2 N. & McC., 79, and *Garrett* v. *Weinberg, supra,* some stress is laid, and in a proper case properly laid, on the fact that the disqualification of the juror was not known to the party or his counsel until after the trial, yet we think this should be qualified by the proviso that such ignorance is not due to the want of diligence; for where the disqualification relied on might have been discovered by the exercise of ordinary diligence, it affords no excuse for failing to make the objection in due season; for, as was said in *State* v. *Fisher, supra,* a party 'should not be permitted to take advantage of his own negligence.' " In this case, as we have seen, the appellant failed to make us of the means afforded by "the law to enable him to ascertain the qualifications of each juror presented, and he must take the consequences of his own default." In this case the books of registration, which are public records in Charleston County, would have disclosed the juror's disqualification, and defendant's negligence in not consulting the same should prevent us from suspending this appeal now for the purpose named. The motion is, therefore, refused.

The 1st, 2d, and 3d exceptions impute error to the order of Judge Benet, made at chambers, Winnsboro, S. C., September 29, 1897, refusing defendant's motion to make the complaint more definite and certain, exceptions to which having been previously duly noticed. We think the motion was properly refused. The complaint, pursuant to the practice existing at the time it was filed, which was previous to the act of February 21, 1898, 22 Stat., 693, to regulate the practice in actions *ex delicto,* alleged three separate causes of action, each based primarily on a specific act of alleged negligence; the first being insufficiency of brakemen; the second, failure to provide brakes on all freight cars not four-wheeled; the third, defective track by improper grading at the place of the injury. In the first cause of action, it was alleged that plaintiff. who was conductor of the train, in consequence of the failure to supply a sufficient number of brakemen, had to perform also the duties

of a brakeman on the top of the train, and while so acting, the train gave a sudden jerk, and caused plaintiff to be thrown to the ground from the moving train and injured; in the second cause of action, it was alleged that while performing also the duties of a brakeman on top of the train, rendered necessary by the failure to supply sufficient brakemen, which position was also rendered unsafe and insecure by the failure to supply each car with good and sufficient brakes, by reason of such negligence, and the sudden jerk of the train, he was thrown off and injured; in the third cause of action, it was alleged that the defective roadbed caused the long train of cars, thirty-seven in number, to give a sudden lurch and jerk, which threw plaintiff off and injured him, while performing the duties of brakeman on top of the train, rendered necessary by the failure to supply a sufficiency of brakemen. Appellant's objection to the first cause of action is, that it contains allegations of two acts of negligence, insufficiency of brakemen and the sudden jerking of the train; to the second cause of action, that it contains allegations of three acts of negligence, insufficiency of brakes, insufficiency of brakemen, the sudden jerking of the train; and to the third cause of action, that it contains allegations of the defective construction of the track which caused the sudden jerking, which threw plaintiff off, and then repeats the allegations in the first cause of action as to insufficiency of brakemen, and the allegation in the second cause of action as to failure to provide brakes on each car.     We think the causal relation among the alleged negligent acts, defective construction of track, causing a long train of cars to make a sudden jerk, which threw plaintiff from his post of hazard, rendered more dangerous by the failure to supply each car with brakes, in which position he was placed by the failure to provide a sufficiency of brakemen, show co-operating causes leading to the result, instead of any single cause sufficient of itself to produce the result, and such acts of negligence might very properly have all been alleged in a single cause of action.     It was only when the alleged acts of negligence were distinct and

7—55

independent, and capable severally of producing the result complained of, that it was necessary, previous to the act, *supra,* that each of such acts of negligence should be stated as a separate cause of action.    But where the act complained of is the resultant of several co-operating acts of negligence, manifestly the cause of action is single.    Therefore, what- ever else might have been urged in reference to the pleading before us, it cannot be said that it is objectionable for lack of definiteness and certainty.

The next question presented is whether Judge Watts, on the trial of the case, erred in overruling defendant's demur- rer to the first, second and third causes of action, on the ground that the said complaint, in alleging each of said causes, did not allege facts connecting the alleged negligence of the defendant with the injury which re- sulted.    It appears from the allegations of the complaint that the injury resulted by reason of the acts of negligence alleged in each cause of action.    This being admitted, it is clear the demurrer was properly overruled.

The 5th, 6th, 7th, 8th exceptions allege error in allowing plaintiff to amend his complaint as to the 3d cause of action, during the trial, after the close of the evidence.    The amend- ment allowed was to strike out of the third paragraph of the third alleged cause of action the words, "Curves at a point where there was the highest," which appear below in capitals and in brackets: "3. That yet the defend- ant, not regarding its duty, conducted itself so care- lessly, negligently and unskillfully in this behalf, that at the place hereinafter mentioned on said railroad, the track was so constructed as to make a decided (CURVE AT A POINT WHERE THERE WAS THE HIGHEST) grade, with low grades immediately before and after said high grade, whereby a long train was caused to give a sud- den lurch and jerk, which rendered the said track and road- bed unsafe, and made it extra hazardous for the employees of said defendant in the performance of the duties necessary and proper in the operation of said train, all of which was well

known to the defendant." It appears that defendant offered no testimony, and so secured the right to open and reply. Mr. Gadsden, for defendant, addressed the jury, and was followed by Mr. Legare, for plaintiff. At the close of Mr. Legare's argument, Mr. Murphy, for plaintiff, asked leave to make the amendment. After argument on the question, the amendment was allowed. Then the Circuit Judge asked Mr. Gadsden if he was taken by surprise, and if he had any motion to make. To which Mr. Gadsden replied, no—that he did not think the Circuit Judge had power to allow the amendment at that stage of the proceedings. Whether he had such power, is the question before us. We think the amendment was clearly within the power of the Court. Secs. 190, 191, 192, 194 of the Code of Civil Procedure; *Booth* v. *Langley Co.,* 51 S. C., 415. In this last mentioned case it was held to be within the power of the Circuit Court, during trial, to amend a complaint alleging injury by a spinning frame at which plaintiff was working so as to allege injury by a different spinning frame at which another was working, so as to conform to the proof. So the case here was not a total failure of proof, but a mere variance within the Court's power of amendment. The evidence was to the effect that the injury occurred on defendant's track, near Berry Hill, by reason of a defective grade or depression, which caused a long train of cars to jerk, and that the place of injury was near to, but not at, the curve referred to in the complaint. The place of injury and the general nature of the cause of injury, defective road construction, was not so materially different as to change substantially the cause of action.

Defendant's fourth request to charge was as follows: "Fourth. A railroad company must furnish a sufficient number of hands for the train; if they are not enough, the conductor may refuse to run the train. If he runs a train without a proper number, he waives the obligation of the company, and it is at his own risk, and in case of injury from such running of the train, he cannot claim damages from the company." In response to which the

Circuit Judge said: "I refuse to charge you that in that language. I charge you that a railroad company must supply a sufficient number of hands, and a conductor may refuse to take a train out without sufficient hands to run it. If the testimony satisfies you that there were not a sufficient number of hands when this conductor started with that train, it was his duty, at that time, to refuse to take out that train; and if he did take it out, he waived the obligation of the company and ran it at his own risk. But if he had already taken the train out, and somewhere between where he started and his destination, he protested against taking on additional cars without having additional hands, I charge you that it is a question of fact for you to determine, whether he waived his rights and the obligation of the company. In other words, it is a question for the jury to say whether he waived the obligation of the company and took the risk himself in going on without more train hands." This is made the basis of exceptions 9 and 10, the 9th exception assigning error in general terms to the refusal to charge, and the 10th exception assigning as specific error to the charge, that it was in respect to matters of fact, in violation of art. 5, sec. 26, of the Constitution. The charge was substantially as requested, and so appellant has no cause for complaint. The qualification placed by the Circuit Judge on the general language of the request was proper, in view of the evidence, which was not disputed, that the train leaving Blakes going towards Charleston, having twelve cars, had one brakeman, which was sufficient, but at Pon Pon, where the cars in the train numbered thirty-seven or thirty-eight, plaintiff communicated with the train dispatcher that it was impossible for him to handle these cars, and that the train dispatcher ordered him to take them anyhow. The charge was not a charge in respect to the facts, but was upon a hypothetical statement of facts rendered necessary to explain the law applicable to the particular case before the Court. The charge, too, was in accord with the rule in this State, that when the evidence is capable of more than one inference, the jury must

determine whether the servants remaining in the service of the master, after knowledge of a risk or danger within the obligation of the master to provide against, is a waiver of the master's obligation and at the servant's risk. *Bussey* v. *Charleston &c. R. R. Co.,* 52 S. C., 438.

Error is assigned for refusal to charge appellant's sixth request to charge, viz: that section 1499, General Statutes (1681, Revised Statutes), requiring brakes to be placed on every freight car, other than four-wheel freight cars, does not apply to "gondola" or "flat cars." The language of the statute is: "Every railroad corporation shall cause a good and sufficient brake to be attached * * * to every car used for the transportation of freight, except four-wheeled freight cars used only for that purpose, &c." There was evidence that there were seventeen gondola cars used to haul gravel, and some flat cars loaded with lumber in the train, and that these were eight-wheel cars without brakes. The Circuit Judge was correct in refusing this request, as there is no authority in the statute for excepting such eight-wheel cars, if they are used in the transportation of freight.

The last ground of appeal is as follows: "XII. Because his Honor erred in refusing to charge the 12th request to charge of the defendant, to wit: 'If the jury find by the preponderance of the testimony that the plaintiff had traveled over the road of this defendant for a considerable period, and knew of the defects in the construction of the track at Berry Hill, as is set out in his complaint, and did not complain or protest against same to the officers of the company, but continued voluntarily in their service as conductor, knowing of such alleged defect in the construction of its track at that point, then the jury is justified in concluding that the plaintiff had assumed the risk incident thereto, and he cannot recover on that ground.'"

The remaining in the master's service by an employee, after knowledge of an alleged defect in the instrumentalities to be furnished by the master, is not, *as matter of law,* an assump-

tion of the risk by the employee. Whether the employee assumed the risk, is a question for the jury, to be determined from all the circumstances of the case. If the undisputed evidence is such as to be capable of but one inference, viz: voluntary assumption of the risk by the employee, then the jury could be rightfully instructed that the employee could not recover. *Bussey* v. *R. R., supra.* In the case here, there was evidence to the effect that plaintiff protested to the train master, that his force of brakemen was inadequate to manage his long train, and that he was ordered by the train master, "Take them anyhow; let me hear nothing more from you. Take the cars and bring them on to Charleston." Was this order of the train master an assurance that the force of brakemen was adequate for the safe handling of the train, or was it a request to plaintiff to continue in defendant's service, notwithstanding the risk from an inadequate supply of train hands, or was it an assumption by the defendant company of the risk? These were matters for the jury in determining whether plaintiff assumed the risk by remaining in defendant's service after knowledge of the alleged defect. Then the causal connection between the alleged negligence in failing to supply sufficient brakemen, which, as alleged, rendered it necessary for plaintiff, though conductor, to also assume the duties of brakeman, which placed him on top of the train, and thus exposed him to the danger of the sudden jerk arising to a long train by reason of the alleged defect in the track, must be remembered. We have, then, in this case evidence of a protest by plaintiff against one alleged act of negligence, which operated with the alleged defect in the track to bring about the injury, and an order by the defendant company to the plaintiff to serve notwithstanding. In 14 Eng. Law, 357, the doctrine is laid down: "If a master or superior orders an inferior into a situation of danger, and he obeys and is injured, the law will not charge him with assumption of the risk, unless the danger was so glaring that no prudent man would have entered into it," which is supported by citation of cases. Here, then,

was another question for the jury, was the danger or risk in this case so obvious as that no prudent man ought to have entered it. The case of *Thorpe* v. *Missouri Pac. R. R. Co.,* 89 Mo., 650, 58 Am. Rep., 120, is in point. In that case it was held that an employee of a railroad company, who had complained to the yard master that the work on which he was engaged was unsafe, because enough hands were not furnished to perform it, and who, without any promise from the company to furnish more, continued in the service and was injured, was not negligent, as matter of law. To the same effect is *Patterson* v. *Pittsburg &c. R. R. Co.,* 76 Penn. St., 389, 18 Am. Rep., 412. Whether the matter of assumption of risk by an employee is to be tested by the law of waiver, *Hooper* v. *R. R.,* 21 S. C., 541, or the law of negligence, *Bussey* v. *R. R., supra,* in either case, it is a question of fact for the jury. Under these views there was no error in refusing the request to charge.

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE McIVER. While I concur in the *conclusions* reached by Mr. Justice Jones in this case, I do not agree with him in one of the *reasons* which he assigns for his conclusion, that the motion to suspend the appeal for the purpose of enabling the appellant to move before the Circuit Court for a new trial upon the ground that one of the jurors who sat on the trial of the case was not a qualified elector under the Constitution for want of registration, and, therefore, not a legal juror. I am not prepared to assent to the proposition that registration is necessary to constitute a qualified elector. It seems to me that, under the various provisions of art. II. of the Constitution, a qualified elector is entitled to at least *two* rights: 1st, eligibility to office; 2d, the right to vote. Hence a person may be eligible to office, if he is a qualified elector, but he may not have the right to vote, because he may lack some one of the qualifications prescribed by sec. 4 as necessary to exercise the right of suffrage—one of which is registration.

Sec. 2 provides that "Every qualified elector shall be eligible to any office to be voted for, unless disqualified by age, as prescribed in this Constitution." Then sec. 3 prescribes what shall be the qualifications of an elector, in the following language: "Every male citizen of this State and of the United States, twenty-one years of age and upwards, not laboring under the disabilities named in this Constitution, and possessing the qualifications required by it, shall be an elector." Now, the disabilities named in the Constitution, sec. 6, consist of only two classes of persons: 1st. Persons who have been convicted of certain offenses therein specified, unless pardoned by the governor. 2d. "Persons who are idiots, insane, paupers supported at the public expense, and persons confined in any public prison." I do not find any clause in the Constitution which can be construed as prescribing registration as one of the qualifications of *an elector,* but I do find several clauses, cited in the opinion of Mr. Justice Jones, prescribing registration as a prerequisite to the exercise of one of the rights of an elector, to wit: the right to vote. On the contrary, I find in sec. 8 the following provision: "The General Assembly shall provide by law for the registration of all qualified electors." This language necessarily implies that a person may, and, in fact, must be, a qualified elector *before* he is entitled to registration, and hence registration cannot possibly be one of the requisites necessary to constitute one a qualified elector. From this it follows that the fact, if it be a fact, that the juror named was not a registered voter, does not disqualify him from serving as a juror, for the provision in sec. 22 of art. V. of the Constitution is that: "Each juror must be a qualified elector"— *not* a qualified voter. It seems to me that the provisions of the Constitution in regard to registration were designed to afford conclusive evidence that a person who had been registered is a qualified elector, and, as such, entitled to exercise one of the rights of such an elector, to wit: the right to vote, so as to avoid the waste of time and confusion incident to an investigation of his right when he offers to cast his ballot.

For this reason I concur in the conclusion that the motion to suspend the appeal for the purpose indicated, should be refused.

But there is another reason why such a motion should be refused. A motion of this character is addressed to the discretion of this Court; and such discretion should not be exercised, when it appears from the showing made that the moving party has been negligent in claiming his rights. Where a party has failed to make any objection to a juror at the proper time, he should not, after verdict, be allowed to raise any objection to the qualifications of any juror who sat upon the trial, until he first satisfies the Court, not only that he did not know the facts upon which he bases his objection in time to make the same in due season, but also that he could not, by due diligence, have discovered the facts upon which he proposes to rely in time to make his objection in due season.