ADAMS v. SOUTH CAROLINA AND GEORGIA EXTENSION R. R. CO.

1. PLEADINGS—AMENDMENT.—Where an amendment does not work a surprise on opposing counsel, a motion during trial to amend a pleading, so as to conform to the proof, should be granted.
2. NONSUIT—NEGLIGENCE.—When there are two or more acts of negligence alleged, nonsuit should not be granted on failure of proof tending to support one, if there be evidence tending to support the others.

MR. JUSTICE WOODS *dissents, because there was in his opinion no proof tending to show any negligence of defendant.*

Before DANTZLER, J., York, February, 1903. Reversed.

Action by Lillian S. Adams, as administratrix of estate of Ernest L. Adams, against South Carolina and Georgia Extension Railroad Co. From order of nonsuit, plaintiff appeals.

*Mr. W. W. Lewis,* for appellant, cites: *No failure of proof:* Code of Proc., 192. *Error to refuse amendment:* Code of Proc., 190, 191; 51 S. C., 412; 55 S. C., 98.

*Mr. Geo. W. S. Hart* and *N. W. Hardin,* contra. *Mr. Hart* cites: *As to disallowing amendments:* 48 S. C., 565; 50 S. C., 465; 51 S. C., 416; 32 S. C., 145; 43 S. C., 229; 64 S. C., 96; 94 N. C., 525; 119 U. S., 214; 45 S. C., 280; 33 S. C., 200; 47 S. C., 30; 57 S. C., 435; 48 S. C., 306; 61 S. C., 186; 143 Ills., 193; 32 S. C., 145. *There was no proof of any negligence:* 21 S. C., 470; 27 S. C., 76; 62 Am. Dec., 681; 9 Rich., 84; 55 S. C., 390; 65 S. C., 441; 64 Am. Dec., 518; 62 S. C., 130; 61 S. C., 425; 58 S. C., 494; Whar. on Ev., sec. 1263; 39 N. Y., 227; 95 N. Y., 562; 27 S. C., 71; 64 S. C., 313; 59 S. C., 2; 113 N. Y., 378; 51 S. C., 93; 56 S. C., 456; 63 S. C., 576; 7 Ency., 843; McKinney on Fellow-Servants, secs. 72-7; 36 Am. Dec., 279; 109 Mo., 390; 50 L. R. A., 417; 47 Ills., 110; 10 Lea., 747; 7 Ency., 866; 63 S. C., 575; 51 S. C., 96; 18 S. C., 270; 22 S. C., 564; 23 S. C., 528; 55 S. C., 489; 65 S. C., 194; 66 S. C., 99; 41 S. C., 390; 67 S. C., 292. *As to who are fellow-servants:* 25 S. C., 135; 39 S. C., 513; 66 S. C., 439; 12 Am. S. R., 265. *As to reversing engine:* 26 S. C., 495; 21 S. C., 549; 22 S. C., 563; 35 S. C., 383; 42 S. C., 21; 60 S. C., 214; 25 S. C., 452. *As to duties of master:* 15 S. C., 456; 23 S. C., 536; 39 S. C., 511; 56 S. C., 454. *As to assumption of risks:* 66 S. C., 217; 61 S. C., 425; 51 S. C., 93; 27 S. C., 323; 61 S. C., 479; 56 S. C., 456. *As to duties of brakeman:* 26 S. C., 495; 51 S. C., 96.

*Mr. Hardin* cites: *If evidence shows plaintiff cannot recover, nonsuit should be granted:* 50 S. C., 53; 10 S. C., 436; 23 S. C., 289; 29 S. C., 101; 67 S. C., 204; 66 S. C., 486.

April 11, 1904. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. Ernest L. Adams, while employed as and in service as a brakeman on a freight train, owned and operated by the defendant railroad company, was killed at or near Catawba Junction, S. C., on the 24th day of November, 1900. The plaintiff was duly appointed the administratrix of his estate, and as such brought her action against the railroad company, under what is known as Lord Campbell's Act, to recover damages alleged to be $20,000 in favor of said Lilian S. Adams, as the widow of said intestate. In her complaint, omitting the caption and the formal parts relating to the corporate character and location of the defendant railroad company, and that part alleging the grant of administration to the plaintiff, also the date of the death of intestate, she alleges as follows:

"5. That while in the employment of said defendant company on said date in said capacity, while at Catawba Junction, in York County, he was called upon by the officers and employees of said road in authority over him to assist in the handling, management and shifting of the freight train on which he was employed as aforesaid, and which was being so handled, managed and shifted under the direction and by the orders of the conductor of said train.

"6. That while engaged as set forth in the preceding paragraph and while engaged in making (under orders to him from the conductor) what is known as a 'flying switch,' the said Ernest L. Adams, without fault on his part, but through the negligence and carelessness of the said railroad company, its agents, employees and officers, was projected and thrown upon the tracks of said railroad company in front of the engine operating and pulling said train, and then and there crushed to death by the wheels of said engine, the same being operated by the agents and employees of said defendant company.

"7. That the work and labor of making said 'flying switch,' in which the said deceased was engaged under orders to him from the conductor of said train at the time of his negligent killing by said railroad company, was an extra

hazardous, careless and negligent handling of said train by the officers and employees in authority over said deceased, and was not necessary nor incident to the proper and reasonably safe management and operation of said train nor the switching of the cars thereof, and which, on account of its dangerous nature, risk and exposure to which it subjects employees of railroads, is prohibited by a large majority of the railroads operating in this country. Plaintiff in this connection further shows and alleges that the said deceased was totally unfitted to perform the work required of him in assisting in making said 'flying switch,' and his unfitness for this work was well known to said railroad company, its officers and agents, before and at the time he was ordered to do said work.

"8. That the work of assisting in making said 'flying switch' was not within the scope of the duties for which said Ernest L. Adams was employed as flagman, but owing to the negligence of the said railroad company, in failing to provide for said train the number of brakemen necessary to properly operate it, and the number required by the laws of this State to be supplied to a train of the size and having the number of cars that were in said train, whose duty it would have been to have made such 'flying switch' instead of deceased, the said Ernest L. Adams, was ordered by the conductor of said train to do said work; and while doing the same, without fault on his part, but through the negligence of the said railroad company, its agent and officers, in the particulars above set out, the defendant met his death as aforesaid.

"9. That by the negligent killing of said Ernest L. Adams, this plaintiff being the beneficiary for whose benefit and in whose behalf this action is brought, by the negligent killing as aforesaid, by the loss of companionship and support of said deceased, and the great mental anguish to which she has been subjected by reason of said killing, and the loss of said deceased, has been damaged in the sum of twenty thousand dollars, payment of which has been

demanded of defendant and the same refused, and now remains unpaid."

The answer of defendant admits its corporate character and location; that Ernest L. Adams came to his death at the time and place set out in the complaint; that plaintiff is the administratrix of his estate; but it avers that Ernest L. Adams came to his death from his own gross carelessness and recklessness, or through misadventure; and then denies all other allegations in the complaint.

The action came on for trial before Judge Dantzler and a jury at a special term of the Court of Common Pleas of York County, held on the 3d day of February, 1903. At the close of plaintiff's testimony the defendant moved for a nonsuit. During the argument for that motion the plaintiff moved the Court to be allowed to amend his complaint by striking out the word "flying," wherever it occurred in the expression "flying switch," so as to make the allegations of the complaint correspond with the proof.

The motion to amend was refused and an order for nonsuit was granted. The order for nonsuit was as follows:

"The above entitled action came on to be tried before me and a jury. At the close of plaintiff's testimony, defendant moved for a nonsuit on two grounds:

"1. That there was no testimony that the deceased, Ernest L. Adams, was engaged at the time that he met his death in making a 'flying switch,' as alleged in the complaint.

"2. That, apart from the ground first stated, there was no evidence of any kind of negligence on the part of the defendant, as a cause of the death of the plaintiff's intestate.

"The motion for nonsuit by Messrs. Geo. W. S. Hart and N. W. Hardin, attorneys for the defendant, is granted, with leave to the defendant to enter judgment for costs against the plaintiff."

From this order the plaintiff has appealed upon the following grounds:

"I. In that his Honor erred in refusing to allow the plaintiff to conform the pleadings to the proof by striking out the

word 'flying,' wherever it occurred in the amended complaint in the expression 'flying switch,' the error being that said motion should have been allowed because the variation between the pleadings and the proof was not material, and did not mislead the defendant. The proof being that the plaintiff's intestate came to his death while engaged in making a switch for the railroad company, although the same was not a 'flying switch.'

"II. For error in holding that the plaintiff could not recover in the absence of evidence tending to show that the deceased came to his death while making a 'flying switch,' and that the plaintiff was limited strictly to the allegations of the amended complaint, that the negligence of the railway company was in making a 'flying switch,' and holding by indirection, at least, that that was the only ground of negligence charged against the defendant in said amended complaint.

"III. For error in failing to hold that the amended complaint set out negligence on the part of the defendant railway company in two particulars, namely: that the railway company was negligent in requiring the plaintiff to make a 'flying switch;' and second, that the amended complaint charged, also, that the railway company was guilty of negligence in projecting and throwing forward the deceased upon the tracks of said railway company in front of the engine operating and pulling said train, and then and there crushing to death the deceased by means of the wheels of the said engine, as shown by the allegations of the sixth paragraph of the complaint.

"IV. In holding that there was no evidence of any kind of negligence on the part of defendant causing the death of plaintiff's intestate; whereas, it is respectfully submitted that the testimony of W. A. Graham afforded some testimony sufficient to go to the jury to show that the plaintiff's intestate, while standing upon the pilot of the engine, was, through the negligence and carelessness of the engineer operating the engine, thrown forward upon the tracks of said

company and crushed to death by the engine operated by the engineer.

"V. For error in granting nonsuit when there was some evidence at least of negligence on the part of the defendant company."

We will now pass upon these exceptions:

1. We think that there was error in refusing to allow the plaintiff to amend his complaint so as to have the allegations of the complaint conform to the proofs offered. As soon as the plaintiff's second witness (Mr. Graham) testified that they (the train hands under his direction) were endeavoring to put three freight cars upon the switch track so as to take one from the others, but that they were not attempting to make what is known as a "flying switch," Mr. Lewis, as plaintiff's attorney, at page 21 of the "Case," said, "The term we have used in the complaint is a misnomer;" and when the Circuit Judge said, "I just wanted to know what a 'flying switch' was," Mr. Lewis again said, "That is simply a misnomer." It seems to us that the Court and the opposing counsel, then and there, were apprised of the mistake made by plaintiff's counsel—that there was then developed a difference between the allegations of the complaint and the *probata.* Counsel for the respondent at no time announced that the amendment, if granted, would work any surprise to him It seems to this Court that this point is fully covered by the two cases: *Booth* v. *Langley Co.,* 51 S. C., 412, 29 S. E., 204, and *Mew* v. *R. R. Co.,* 55 S. C., 90, 32 S. E., 828. In the first case just cited a little nine-year-old girl was injured by defective machinery in a factory. In her complaint she described that the spinning frame assigned to her, the plaintiff, was defective; whereas, it turned out in the testimony that it was not the spinning frame assigned to her that was defective, but that assigned to another. This Court held that when the plaintiff asked leave to amend, it was error in the Circuit Judge to refuse her motion. So, also, in the second action cited, where the question was, Did the Circuit Judge have power to

allow an amendment to the complaint during the trial so as to allow the allegations of the complaint to conform to the testimony during the trial? This Court held that the Circuit Judge had the power, and cited sections 190, 191, 192 and 194 of the Code of Procedure, and also *Booth* v. *Langley Co., supra,* as supporting this power of amendment. This exception is sustained.

2. We think there was error as pointed out in the second exception. The plaintiff was not limited by the allegations of the complaint to negligence in the "flying switch." There were other grounds of negligence in the complaint. This exception is sustained.

3. The third exception is sustained. A careful scrutiny of the complaint discloses that the plaintiff relied, also, upon the negligence of the railroad company, in having its engineer to stop its train so suddenly as to throw plaintiff's intestate on the track, where its engine crushed the intestate to death.

4. We think the fourth exception is well taken. Certainly Mr. Graham's testimony was material when he described how the intestate was thrown by the sudden reversing of the engine upon the railroad track, and then crushed to death. The plaintiff was entitled to have this testimony go to the jury.

5. We have already virtually passed upon this exception. It is sustained.

By what we have said, we do not mean to say what weight, if any, the jury shall attach to this testimony, only that there was some testimony.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed and a new trial had.

MR. JUSTICE WOODS, *dissenting.* I concur in the view expressed by the Chief Justice, that the plaintiff was entitled to amend, but I think the judgment of nonsuit should be sustained on the ground that there was no evidence that the death of plaintiff's intestate was caused by the negligence of

the defendant.   As appears from the evidence offered by plaintiff, Adams was run over and killed by the engine while engaged in shifting cars as brakeman.   There were two different ways in which he could have performed this duty in comparative safety, but without orders from his superior and contrary to the custom of the crew with which he was working, he, of his own volition, chose the most dangerous method, and undertook to couple cars with a lever while standing on a narrow platform or ledge attached to a moving locomotive.   It is not clear whether he fell before the engine was reversed, or in consequence of the jar produced by reversing.   But assuming the fall was produced by the jar, as alleged by plaintiff, he was well aware that the engineer would necessarily reverse in order to carry the engine back from the switch to the main track.   There is not the slightest evidence that the engineer reversed without warning, or before Adams had time to get down from the dangerous position he had assumed.   As it seems to me, the only inference that can be drawn from the testimony is that the deceased lost his life by misadventure in a position of great danger, which he had taken voluntarily and negligently.