LEO J. McCORMICK v. W. L. HUTCHISON ELECTRIC COMPANY and J. LIVINGSTON & COMPANY, Appellants.—31 S. W. (2d) 971.

Division Two, October 13, 1930.

*Langworthy, Spencer & Terrell* for appellants.

382

*Clif Langsdale* for respondent.

HENWOOD, C.—By this suit, filed in the Circuit Court of Jackson County, Leo J. McCormick seeks to recover damages in the sum of $10,000 for personal injuries alleged to have been caused by the negligence of defendants. The suit was dismissed as to W. L. Hutchison who was originally joined as a defendant. After a verdict in favor of defendants, the court sustained plaintiff's motion for a new trial on the grounds that errors were committed in refusing plaintiff's instruction numbered 2, and in giving defendants' instructions 10 and 11, and, from the order granting plaintiff a new trial, defendants appealed.

Defendants contend that, if a case was made for the jury, plaintiff's Instruction 2 was properly refused and their instructions 10 and 11 were properly given. And they further contend that their demurrer to the evidence should have been sustained, and that, therefore, plaintiff is not entitled to a new trial, even though errors were committed in refusing plaintiff's Instruction 2 and in giving their instructions 10 and 11. Plaintiff insists that a case was made for the jury, and that he is entitled to a new trial on the grounds specified by the circuit court, namely, the errors of that court in refusing his Instruction 2 and in giving defendants' instructions 10 and 11.

The pertinent allegations of the petition read as follows:

"Plaintiff states that the defendants W. L. Hutchison Electric Company and J. Livingston & Company are and were at all the times herein mentioned, corporations organized and existing under and by virtue of law; that all of the defendants are and were at all the times herein mentioned, copartners doing business under the style and firm name of Hutchison, Livingston & Company, and engaged in the business of manufacturing and installing electrical apparatus, wiring and appliances in some buildings in Kansas City, Missouri, for Sears, Roebuck & Company; that at all of said times plaintiff was in the employ of the defendants in and about

said building and said work, as an electrician; that in the pursuit of his said employment it became necessary, and he was ordered and directed by defendants, to raise a reel of cable onto a box and a wooden horse; that said reel of cable weighed about. 600 pounds; that plaintiff and another workman in the employ of the defendants, named George Brownell, commenced to do and were ordered to do said work by the defendants; that while plaintiff and said other workman were about to raise and lift said reel of cable, one end onto a box and the other end on to a wooden horse, defendants' agent and foreman negligently called said other workman away and assigned him to other duty and left the plaintiff to raise and lift said reel of cable by himself, when the said agent and foreman knew, or by the exercise of ordinary care would have known, of the weight of said reel of cable as aforesaid, and that not fewer than two men should have been left and assigned to raise and lift said reel and that the said reel was too heavy for the plaintiff and was so heavy that plaintiff might and would be injured in raising and attempting to raise said reel of cable by himself. Plaintiff states that after said other workman was called away as aforesaid, he did attempt to and did raise said reel by himself, and that in so doing, because the same was too heavy for him or for one man to lift and raise, he was injured as hereinafter set out. Plaintiff states that his injuries herein complained of were caused by the said negligence of the defendants, their said agent and foreman.

"For other and further assignment of negligence against the defendants, plaintiff states that defendants negligently ordered and directed him to raise and lift said reel of cable by himself without any help, when said defendants knew that in attempting to do so, because the same was too heavy for plaintiff or for one man, plaintiff might and would be injured. Plaintiff states that he was injured in attempting to raise and lift the said reel of cable by himself. Plaintiff states that his injuries herein complained of were caused by the said negligence of the defendants.

"For other and further assignment of negligence against the defendants, plaintiff states that the defendants negligently caused and permitted him to raise and lift said reel of cable by himself, when defendants knew, or by the exercise of ordinary care would have known, that the said reel of cable was too heavy for plaintiff or for one man, and that plaintiff in lifting and attempting to lift said reel of cable, might and would because thereof be injured. Plaintiff states that his injuries herein complained of were caused by the said negligence of the defendants."

The answer is a general denial, coupled with pleas of contributory negligence and assumption of risk.

The reply is a general denial of new matter in the answer.

The following statement of the evidence adduced by plaintiff (allowing for some alterations) is taken from plaintiff's brief:

"Defendants were electrical contractors engaged in the business of installing electrical apparatus in some buildings that were being erected by Sears, Roebuck & Company in Kansas City, Missouri. On or about the 22nd day of October, 1925, plaintiff was in the employ of the defendants in and about said work and said buildings, as an electrician. On or about the said date, he and another electrician, named Brownell, were directed by defendant's foreman to get a reel or spool of wire at the storeroom, and to take it to one of the said buildings where the wire was to be run through metal conduits. The reel or spool was shaped 'like a couple of wagon wheels with a drum in between them.' Around the drum was wound several hundred feet of wire which was about one-half inch thick. The two men rolled the spool or reel from the storeroom to the building where the wire was to be installed, a distance of a couple of blocks. The spool with the wire so wound around it was about four feet in diameter and about eighteen inches wide. When the two men got the spool to the place where it was to be unwound, and the wire was to be run through conduit pipes, it became necessary to raise the spool off of the floor so that the spool would turn and permit the wire to be unwound. They got an iron pipe about one inch in diameter and about five feet long and placed it through the center of the spool. They then got a wooden box and a carpenter's saw-horse, of about equal height, with the intention of placing one end of the iron pipe on the box and the other end on the saw-horse, in which position the spool could have been revolved upon the axis or the iron pipe. When they were ready to lift the spool up to the box and the saw-horse, as aforesaid, defendants' foreman sent Brownell away to do other work, and directed plaintiff to finish the job of raising the spool up, as aforesaid, onto the box and the saw-horse. The spool of wire weighed about 300 to 400 pounds. Plaintiff proceeded to tip the iron pipe so as to get one end of it on to the box. He then took hold of the other end of the pipe with both hands and raised it up in order to place it on the saw-horse, which he had already placed in a position where it was close to that end of the pipe. When he got that end of the pipe up to a height of about one inch above the top of the saw-horse, 'waist-high,' it became necessary to pull the saw-horse over under the pipe. The horse was already in a position where the end of it would have been under the pipe, but dropping the pipe onto the end of the horse would have caused the horse to tip up, so he held the pipe with his left hand, and reached for the horse with his right hand, for the purpose of pulling the horse into the proper position under the pipe. As he did so, the strain of the weight being held with his left hand was so great that he was ruptured. He raised the weight of the spool

of wire by taking hold of the end of the pipe with both hands without any trouble. The trouble occurred while plaintiff was holding the weight with his left hand in order to use his right hand to pull the horse into the proper position under the pipe, as shown by the following testimony of the plaintiff:

"'Q. And then you went to reach over with one hand to get that wooden horse to slide under it? A. A sort of a step over, yes, you would not call it a step; it was just, you might say, taking the weight off of one foot and moving it over so you could go maybe a little bit further one way or the other.

"'Q. When you started to lift the reel of cable was there anything to keep you from letting it drop to the ground if you thought it was too heavy? A. Well, when I made the step, I was right over the horse, you see.

"'Q. Were you prior to the time you made the step? A. Well, I couldn't say to that because it all happened so quick, that the reel of cable and horse were so close that when I let loose of it, why, it was on the edge of that horse.

"'Q. What happened? A. Well, I had an awful pain, felt like somebody stuck a knife in me.

"'Q. Did you get it on the saw-horse? A. Why, it just dropped on it, I just let loose of it and it dropped on it.

"'Q. Now, if there had been another man there what could he have done to have helped you with this? . . .

"'Q. Go ahead. A. Why, he could have pushed this horse under it or assisted me in such a manner that I would not have had to have moved either one way or the other.

"'Q. As I understand, when you lifted it up you had ahold of one end of the pipe, at one end? A. Yes.

"'Q. With both hands? A. With both hands.

"'Q. And when you tried to get the horse under it you had to turn loose of one hand? A. Had to turn loose with my right hand.

"'Q. You would not have had to do that if you had another man with you? A. No, I would not have had to have done it.

"'Q. Did you think you could do it? A. Well, I thought by being careful I could do it.'

"Plaintiff knew the approximate weight of the spool of wire."

Other details in plaintiff's evidence will be noted in connection with our discussion of the demurrer to the evidence.

Defendants stood on their demurrer and offered no evidence.

According to plaintiff's testimony, he had been a journeyman electrician, and had been engaged in doing general electric work, for fifteen years prior to his employment by defendants. At the time he was injured, he was about thirty-two years of age, and had been working for defendants, on the Sears-Roebuck job, for several months. He had handled "a con-

siderable amount'' of wire, and some spools of wire, on that job. After he and his coworker, Brownell, had rolled a spool of wire from the storeroom to the power house, a distance of two blocks, and started to raise it off of the ground and place it on a box and a saw-horse, in a position where the spool could be revolved and the wire unwound, defendants' foreman ''called Brownell away'' and told plaintiff ''to go ahead and do it.'' He ''just proceeded to do it,'' without objection or complaint and without requesting help of any kind. He knew, ''approximately,'' the weight of the spool of wire before he attempted to lift it. He put an iron pipe through the center of the spool, and, by placing one end of the iron pipe on the box and by lifting the other end of the iron pipe with both hands, raised the spool off of the ground, and high enough to place that end of the pipe on the saw-horse, without any trouble; but, when he attempted to hold the iron pipe in that position, and to hold up the weight of the spool, with his left hand, and to adjust the position of the saw-horse with his right hand, he ''had an awful pain,'' and suffered the hernia or rupture complained of. Thus it appears that plaintiff attempted to do the work assigned to him in his own way. He went about it calmly and deliberately. He was not suddenly placed in a situation where he was compelled to exert himself to the utmost or be injured otherwise. He did not meet with any untoward happening. He was injured simply because he overexerted himself. ''Under such circumstances, according to well-reasoned authority, the master cannot be held liable for consequent injuries.'' [Hunter v. Busy Bee Candy Co., 307 Mo. l. c. 668, 271 S. W. l. c. 803.] ''The authorities hold that, under such circumstances, the servant is the judge of his own strength, and not being under any necessity to exert himself beyond it, he cannot recover damages for injuries arising merely through lifting or overexertion. The danger of strain or rupture from overexertion under such circumstances is held to be one of the risks incident to his employment which he impliedly assumes.'' [Petrilli v. Swift & Co., 216 Mo. App. l. c. 633, 260 S. W. l. c. 518.] Our courts and the courts of our sister states have so held in numerous cases. [Haviland v. Railroad Co., 172 Mo. 106, 72 S. W. 515; Boll v. Glass & Paint Co. (Mo. Sup.), 11 S. W. (2d) 48; Lutgen v. Railroad Co. (Mo. App.), 294 S. W. 444; Ry. Co. v. Tackitt, 167 Ky. 756; Worlds v. Railroad Co., 99 Ga. 283; Ferguson v. Cotton Mills, 106 Tenn. 236.] And the fact that defendants' foreman ordered and directed plaintiff to place the spool of wire on the box and saw-horse does not alter the general rule above quoted. ''A servant is not, under all circumstances, and at all hazards, bound to obey the order of his master. Obedience to an order may so manifestly jeopardize the safety of the servant as not only to justify, but to demand his disobedience. No servant can voluntarily place himself

in a position in which it is more than likely that he will be injured and recover damages from his master, if he had time to deliberate and with knowledge of the peril took the risk.'' [McDermott v. Railroad Co., 87 Mo. l. c. 295. See, also, Ry. Co. v. Tackitt, and Worlds v. Railroad Co., supra.]

The cases relied on by plaintiff are not in point, being clearly distinguishable on the facts.

Defendants' demurrer to the evidence should have been sustained, and, therefore, plaintiff is not entitled to a new trial, even though it be conceded that the circuit court erred in refusing plaintiff's Instruction 2 and in giving defendants' instructions 10 and 11. The order granting plaintiff a new trial is accordingly reversed and the cause remanded with directions to reinstate the verdict and judgment for defendants. *Davis* and *Cooley, CC.*, concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. *Blair, P. J.*, and *White J.*, concur; *Walker, J.*, absent.