Vernon **HOUSDEN**, Plaintiff-Appellant,

v.

**E. I. DU PONT DE NEMOURS & CO.**, a Corporation, et al., Defendants-Respondents.

No. 46583.

Supreme Court of Missouri,

Division No. 1.

March 9, 1959.

Samuel L. Trusty, Popham, Thompson, Popham, Mandell & Trusty, Kansas City, Daniel J. Leary, Joplin, for appellant.

Herbert Van Fleet, Joplin, Carl E. Geuther, Wilmington, Del. (Seiler, Blanchard & Van Fleet, Joplin, of counsel), for respondents.

VAN OSDOL, Commissioner.

Plaintiff Vernon Housden instituted this action for $50,000 damages for a heart condition allegedly due to overexertion in the work of loading parcels or cartons of explosives into a truck at the plant of defendant E. I. Du Pont De Nemours & Company near Carl Junction. The cartons were being loaded into the trailer of a combination tractor-trailer freight-hauling truck operated by Tri-State Warehousing & Distributing Company, plaintiff's employer.

Generally, plaintiff had averred that defendants, Du Pont and its employee defendant Lloyd H. Swift, were negligent in failing to furnish plaintiff with a reasonably safe place in which to work; in failing to provide plaintiff with reasonably safe appliances for loading; and in failing to provide adequate help or assistance in loading with the appliances provided. It was alleged that plaintiff preparatory to loading was directed by Du Pont's employee, defendant Swift, to move the trailer into such a position that plaintiff, in loading, was deprived of the circulation of air for breathing; that plaintiff was obliged to receive the cartons from a conveyor with no device at the lower end of it to keep the cartons from falling (which cartons, it was alleged, were passed over the conveyor too fast for handling) so that plaintiff was obliged to work too hard in a strained position and overstrain and overexert with resultant damage to the heart.

At the conclusion of plaintiff's evidence the trial court directed a verdict for defendants, and plaintiff has appealed from the ensuing judgment.

Plaintiff-appellant contends the trial court erred in directing the verdict for defendants. Plaintiff argues that he was in no way negligent or, at most, plaintiff's negligence was a jury question; that plaintiff was lawfully on the premises of defendant Du Pont as the employee of Tri-State and his presence there was for the benefit of all of the parties; that the work of loading was under the sole direction and supervision of defendant Du Pont through its employee defendant Swift; and that defendants owed plaintiff the duty to use ordinary or reasonable care to provide plaintiff with a reasonably safe place to work and a reasonably safe method for work with reasonably safe appliances and adequate help. On the other hand, defendants-respondents make the contentions, among others, that, even if plaintiff's heart condition resulted from overexertion brought on by defendants' negligence, plaintiff has no right of recovery. It is urged that plaintiff had knowledge of the conditions obtaining in the progress of the work and of his physical capacity for the work in the shown conditions and voluntarily exposed himself to whatever dangers were incident to the conditions and circumstances of the loading operation; that

no substantial evidence was introduced tending to show defendants' knowledge or notice that the alleged negligence involved any risk of harm to plaintiff; and that there was no substantial evidence that defendants reasonably could and should have anticipated injury to plaintiff. Contentions of the parties require a review of the evidence.

Plaintiff, forty-eight years old, had several years' experience as a truck driver. In February, 1954, he went to work for Tri-State driving a combination motor vehicle hauling explosives. He had twice loaded the trailer of Tri-State's vehicle at the Du Pont plant at Carl Junction, on which occasions the cartons of explosives were transferred to the trailer from other vehicles. Four men had assisted plaintiff in these two former loading operations.

April 13, 1954, plaintiff, driving his employer's vehicle, arrived at the Du Pont plant to receive explosives for hauling. At defendant Swift's request plaintiff drove the vehicle between a parapet and the east side of a magazine and parked the vehicle with the right side of the trailer about one foot east of the east door of the magazine. Defendant Swift and two other Du Pont employees were present, but Swift ordered the two others to other work. Upon plaintiff's inquiry if he was to have help, Swift said, " * * * no, the men had something else to do." Plaintiff said, " 'If I am not going to have any help, take it easy, take it slowly.' " Swift said "he had to get this truck out of the way and get on loading."

His employer, Tri-State, had instructed plaintiff, in loading, to submit himself to the direction and control of defendant Swift. In his work for Tri-State in hauling for defendant Du Pont plaintiff had the duty to "load and help load and unload" the trailer.

In the loading operation the parcels or cartons were moved from the magazine to the trailer by means of a "gravity" roller slide or conveyor passing from the interior of the magazine to the inside of the trailer. The conveyor was such as is usually used in like loading operations. It consisted of two ten-foot sections connected by a curved segment and an additional shorter section, all of which, having been set up and put together, extended or curved from the magazine toward the rear of the inside of the trailer with extreme lower end about one foot from the floor near the rear of the trailer. The cartons, thirty inches long and eight inches wide, each weighing fifty-five pounds, were first loaded in tiers or rows at the rear and, during the loading of the first two rows, the rear doors of the trailer were kept closed at Swift's direction. This, said Swift, was to prevent the cartons "from shifting (so the rear doors could not be closed) or falling out" during the initial work of loading.

Plaintiff had been told by Swift not to let the cartons fall, and as Swift, standing within the magazine placed the cartons onto the conveyor, plaintiff, who was within the trailer, could not all of the time receive the cartons as fast as they moved over the conveyor, so plaintiff with his leg "blocked" the movement of and held back the cartons which were accumulating on the conveyor; and in such position at the end of the conveyor, plaintiff handled the cartons by tossing them two and one-half or three feet onto the stacks. Standing in this position, a carton, having come down the incline of the conveyor, "would hit my leg and jar me." There was no conversation between plaintiff and Swift while the first row, consisting of forty-eight boxes, was placed in the rear end of the trailer; but when the second row was being stacked, and at a time when he had handled seventy or seventy-five cartons, plaintiff was getting awfully hot, was perspiring and was getting weak, and yelled to Swift to slow down. Having loaded twenty-four more cartons, plaintiff sat down and put his foot against the cartons on the conveyor to keep them from falling off. Swift then came to the trailer, and plaintiff told Swift "to slow down * * * that I was getting awful

hot and there was something wrong with me." Plaintiff also said, "Let's rest," and did rest for a short time. Upon being asked why he did not quit loading and get out of the trailer when he was getting awfully hot and had told Swift "there was something wrong with you," plaintiff answered, "Well, I had the boss's truck there to load, and I wanted to get it loaded, and I thought I would get to feeling better, and I wanted to get the load and get on out." After the second tier or row was stacked, Swift opened the rear doors and then plaintiff got some more air. When the third row was about completed plaintiff was getting sick, and developed pain in his chest, arm and jaw. He sat down and put his foot against the cartons on the conveyor to stop their movement. He rested a short while and started stacking again, and finally sat down—"I couldn't go any further." Swift called two employees of Du Pont who continued the loading operation. Meanwhile, plaintiff lay on the tiers of cartons at the rear of the trailer. At Swift's request, plaintiff later moved the combination vehicle to another door of the magazine for loading a different kind of explosive; and after the trailer was loaded completely plaintiff moved the combination vehicle to a point north of Joplin and there telephoned his employer for relief.

There was evidence tending to show that plaintiff suffered a myocardio infarction. There was medical evidence tending to support the finding that this heart attack and condition was due to the stress of the physical exertion of plaintiff in the circumstances of his work in loading the trailer.

Plaintiff formerly had been rejected from military service because of "high blood pressure" which is "a predisposing cause for heart trouble"; and there was evidence that plaintiff formerly to some extent was afflicted with arteriosclerosis.

Other evidence will be referred to in the further course of the opinion.

Plaintiff-appellant has cited Crow v. Missouri Implement Tractor Co., Mo.Sup., 307 S.W.2d 401, a workmen's compensation case, in which this court was treating with the question whether an unusual or abnormal strain causing injury to a workman may be classified as an "accident," as the term is defined in the Workmen's Compensation Law, Chapter 287, RSMo 1949, V.A.M.S., in which case, of course, there could be no issue of liability for negligence. Plaintiff also has cited Schaefer v. Rechter, Mo.Sup., 290 S.W.2d 118, in which case the question was whether there was submissible the element of heart damage as a result of trauma experienced in a collision occasioned by defendant's negligence in operating a motor vehicle; and has cited other cases treating with questions of causal connection and proximate causation between negligence of defendants and plaintiffs' injuries.

In connection with the issue of causation, defendants-respondents doubt that the evidence introduced in this case reasonably supports the inference of causal connection between the alleged negligence of defendants and plaintiff's heart injury. This doubt is occasioned by the testimony of a physician, witness for plaintiff, that there was "no definite difference" of any medical significance between the exertion required in the manner and conditions of the loading of the trailer as plaintiff had testified and the exertion which would have been normally exercised by plaintiff in loading under conditions and by methods which plaintiff claims should have obtained. See now Wood v. St. Louis Public Service Co., 362 Mo. 1103, at page 1109, 246 S.W.2d 807, at page 811, for a restatement of the well-established rule that to make out a submissible case there must be substantial evidence not only of negligence, but substantial evidence that such negligence directly caused or contributed to directly cause plaintiff's injury; and that the usual test as to causal connection is whether the facts show that absent the negligent act, the injuries would not have been sustained. However, in view of our determination, infra, of a decisive issue, we put aside, with-

out deciding, the contention of plaintiff's failure to substantiate the essential element of causation.

■ Defendants have cited employer-employee negligence cases in support of their arguments that defendants were not negligent and that plaintiff assumed or incurred the risk of the conditions under which he worked in loading. For examples, see Williams v. Terminal R. R. Ass'n of St. Louis, 339 Mo. 594, 98 S.W.2d 651; Davidson v. St. Louis & S. F. R. Co., Mo. Sup., 229 S.W. 786. The cases cited are of some value in examining the contentions of the respective parties; however, the facts of these cases are different to those of the instant case, and we shall consider the evidence introduced in the instant case from a standpoint most favorable to plaintiff and apply those principles of law, enunciated in our cases, which we deem determinative of this case.

■ Defendants have also cited cases in which an independent contractor or his employee was injured while working on the premises of the contractee, land-occupier, in which cases it was held that the principle governing the contractee's duty to the independent contractor or his employee was like unto the duty owed to an invitee. See Stein v. Battenfield Oil & Grease Co., 327 Mo. 804, 39 S.W.2d 345; Streicher v. Mercantile Trust Co., Mo.Sup., 31 S.W.2d 1065. In our case, however, although plaintiff was actually the employee of Tri-State, the evidence shows that defendants undertook to direct and control plaintiff in loading or in assisting in loading the trailer at defendant Du Pont's plant, and plaintiff had been directed by his employer to submit to the orders and directions of defendant Swift. Consequently, it would seem that plaintiff in this case, with respect to defendants' duty, stood in the relation of an employee, rather than an invitee, with consequent duty of defendants to exercise ordinary care in providing a reasonably safe place for work, and reasonably safe methods and appliances including adequate help for doing the work assigned plaintiff.

In considering the evidence set forth supra, we have noted the absence of any defect in any appliance provided. The conveyor itself with which plaintiff and Swift were working, and which had no stopping device on the lower end, was like the conveyor carried on Tri-State's truck which conveyor had been provided plaintiff by his employer, Tri-State. And there was no shown negligent conduct of defendants whereby plaintiff suffered trauma occasioning heart injury as in the case of Schaefer v. Rechter, supra, cited by plaintiff. There was testimony that the cartons sliding down the conveyor hit plaintiff's leg and jarred him, but plaintiff does not contend and his medical evidence does not tend to show that his heart injury was due to the jolting or jarring experiences in these incidents. The facts that the cartons were moved over the conveyor too fast for plaintiff to remove and stow them in the trailer; that plaintiff called to Swift asking him to "slow up"; and that Swift did not hear or did not comply did not compel plaintiff to work the harder and overtax himself by immediately handling and stowing all of the cartons put on the conveyor. Plaintiff's own testimony demonstrates that he did not undertake to keep the conveyor free of the cartons accumulating thereon. He stopped the movement of the excess cartons fed onto the conveyor. Swift had made the statement that he had no intention to make the cartons "stack up," but when they came into his "view on the curve" of the conveyor and he could see they were "stacked up" he knew plaintiff wasn't getting them off as fast as he (Swift) was putting them on. When the cartons stacked up, Swift "tried to work slow enough so he (plaintiff) could keep them stacked." As stated, the circumstance that the cartons stacked up on the conveyor was not a compulsion that plaintiff should work the faster to stow away in the trailer and rid the conveyor of the accumulated cartons. In fact plaintiff's own testimony compels the conclusion that plaintiff handled the situation in his own way by blocking the movement of cartons and set his own pace in placing the cartons in the trailer—he

could have stopped loading and rested (and did stop and rest two or more times) during the loading operation.

If plaintiff knew of the circulatory affliction predisposing a heart attack, there is no evidence that he advised defendant Swift of it, and when he was getting hot and said something was wrong with him plaintiff blocked the conveyor and the loading was suspended and no evidence was introduced tending to show that Swift ordered or commanded the resumption of work of loading; but plaintiff as a witness explained that he had then thought he would get to feeling better, and the resumption of work seems to have been prompted by his desire to get his employer's truck loaded and away on the freight-hauling movement. He did not ask for time out, except as we have noted and which time out was taken, neither did he request relief. There is no evidence that Swift by order or command was pressing plaintiff to work beyond his strength or endurance.

Plaintiff's evidence shows that plaintiff's work and movement in loading the truck was voluntary in the circumstances and under the conditions which were known to him. He, experienced in freight hauling and loading and having knowledge of the conditions existent in the loading operation, must have known better than defendants of his own physical strength and working capacity. His injury was not due to any untoward happening or emergency circumstance necessitating exertion beyond his strength. In Missouri our cases hold that in such circumstances the employer is not to be held liable for injuries due to overexertion. Under such circumstances, the employee is the judge of his own strength, and not being under any necessity to exert himself beyond it, he cannot recover damages for injuries arising merely through lifting or overexertion. McCormick v. W. L. Hutchison Electric Co., 326 Mo. 380, 31 S.W.2d 971; Hunter v. Busy Bee Candy Co., 307 Mo. 656, 271 S.W. 800; Haviland v. Kansas City, P. & G. R. Co., 172 Mo. 106, 72 S.W. 515; Lutgen v. Missouri Pac.

R. Co., Mo.App., 294 S.W. 444; Duvall v. Brooklyn Cooperage Co., Mo.App., 275 S. W. 586; 56 C.J.S. Master and Servant § 390, at page 1213.

The judgment should be affirmed, and it is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.